UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 15-10292-NMG

UNITED STATES OF AMERICA,

v.

JOSEPH DEBRUM,
Defendant.

ORDER
October 19, 2015

O'TOOLE, D.J.

The defendant, Joseph Debrum, is charged with violations of 18 U.S.C. § 2422(b), enticing or coercing a minor to engage in sexual activity, and 18 U.S.C. § 2251(a) and (e), enticing or coercing a minor to engage in sexually explicit conduct in order to produce images of that conduct. On August 31, 2015, the defendant appeared before Magistrate Judge Kelley for his initial appearance.[1] The government moved for the defendant's detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (B), and (E) and 18 U.S.C. §§ 3142(f)(2)(A) and (B). The government requested additional time to prepare for the detention hearing. The United States Marshals Service ("USMS") stated that it lacked locally available resources to house the defendant because of his various medical issues. The magistrate judge released the defendant to his residence in Taunton, Massachusetts pending his detention hearing. Conditions of his release required him to execute an unsecured bond of $10,000, report to Pretrial Services as directed, surrender any passport and not

---

[1] He previously was charged in state court for the same conduct underlying his federal charges. He was arrested on June 12, 2015 and released on bail under several conditions, including Global Positioning System monitoring, refrain from use of electronic devices, refrain from use of the internet, avoid contact with all children aged sixteen or under, and avoid contact with the victim. He appeared in state court two additional times before he was arrested on the federal charges. The state probation officer noted no issues of noncompliance.

obtain another, avoid all contact with anyone under eighteen years of age, refrain from possessing any weapons, remain in twenty-four hour home incarceration with location monitoring, refrain from internet use, and notify Pretrial Services of any contact with law enforcement.

A two-day detention hearing was held before the magistrate judge on September 2 and 11, 2015. Following testimony by Special Agent Janet Connolly and additional evidence, the magistrate judge issued an oral order on September 11 requiring the detention of the defendant, and later that day she issued a written order. The magistrate judge found that the government had established by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community if he was released. She concluded, however, that he was not a flight risk, finding that the defendant had met his burden to rebut the presumption and that the government did not establish by a preponderance of the evidence that he poses a risk of flight such that no condition or combination of conditions could reasonably assure his appearance as required. After consultation with the USMS, it was arranged for the defendant to be detained at the Albany County Correctional Facility ("ACCF") in New York, because that facility appeared to be able to address the defendant's medical needs in a detention setting, unlike the usual local detention facilities.

That same day, the defendant filed an emergency motion for stay of the detention order and a notice of appeal of the detention order pursuant to 18 U.S.C. § 3145(b). The appeal was assigned to me as the miscellaneous business judge for the month of September, and I held a hearing on the defendant's motion that afternoon. By then, however, the magistrate had denied his emergency motion for a stay and the defendant was already en route or had already arrived at ACCF, approximately three hours away. As the emergency stay request was moot, I continued the

case for a detention hearing to receive additional evidence, including information regarding how

ACCF was equipped to handle the defendant's medical needs.

In preparation for the hearing and at the defense counsel's request, the Clerk's Office

attempted to coordinate the defendant's transportation to the courthouse so he could be physically

present at the hearing. I learned via email from the USMS that medical personnel at the Albany

facility had informed the USMS that they strongly advised against moving the defendant because

of his medical condition. Medical personnel reported that every one to two hours the defendant's

pressure wounds required dressing, he needed to be repositioned, and his clothing had to be

changed. The USMS reported that it was not equipped to handle the defendant's medical needs in

connection with the court appearance.

On October 1, a status conference was held with the parties to discuss the defendant's

presence at the hearing.[2] I shared two emails from the USMS with the parties. The status

conference was continued to October 5 to give defense counsel additional time to speak with his

client and medical personnel at ACCF. On October 5, defense counsel reported that he had

consulted with his client and medical personnel and, based upon medical advice and his

understanding of his client's condition and needs, he could not advocate for his client's physical

presence at the detention hearing, although his client expressed a desire to attend. The government

also argued that the defendant's presence by videoconference was appropriate under the

circumstances.

---

[2] Prior to the status conference, the grand jury issued an indictment against the defendant and the case was assigned a district judge. In light of my aforementioned involvement and the assigned judge's travel schedule, I will resolve the defendant's present appeal of the magistrate judge's detention order. Other case issues, including the defendant's arraignment, are the assigned judge's province.

On October 8, an evidentiary hearing on detention was held with the defendant appearing via live videoconference. The government recalled Special Agent Connolly to testify about uncharged offenses against other minor victims, the defendant's medical care at ACCF, and issues related to eviction proceedings against the defendant and his fiancée, Nancy Reardon. The defendant called ACCF Health Services Administrator Gloria Cooper and Dr. Silver Masaba via videoconference to testify about the defendant's medical care at ACCF and his current condition.

Additionally, on October 8, 2005, Pretrial Services submitted a memorandum regarding a third-party custodian investigation of the defendant's mother, Filomena Bruneau, completed at my request. The probation officer found the defendant's mother to be a suitable third-party custodian if the Court were inclined to release the defendant. She reported that the mother is well-established in her community of New Bedford, worked for thirty years in the same position prior to retirement, is close to the defendant and helps provide backup care for him, and has expressed a willingness to assist in supervising the defendant in the community and to report any violations of conditions of release.

## I.      Relevant Facts

The defendant is charged with offenses related to his online communications with a minor female. The magistrate judge's detention order describes them in some detail and it is unnecessary to repeat them here. In sum, the defendant allegedly established a relationship with the child through a course of deceit, threats, and manipulation, and coerced her to take sexually explicit photographs of herself and send them to him. There is evidence that he engaged in a similar course of conduct with other minor females as well.

The defendant is a thirty-nine year old lifelong resident of Massachusetts. He has lived at his current residence in government-subsidized housing for approximately fifteen years. He previously performed clerical work, but has been unemployed for over ten years. He collects Social Security Disability Income. He has little in the way of assets.

Prior to his detention, the defendant lived with his fiancée who also serves as his full-time, paid caretaker. They have been in a relationship for thirteen years and have lived together for the past eleven. Currently, the two are involved in separate eviction proceedings. The defendant and his fiancée have entered into Agreements for Judgment in the state housing court agreeing to vacate the apartment on or before December 4, 2015.

The defendant faces serious health issues. He was born with spina bifida and is paraplegic. He is wheelchair-bound and requires assistance performing activities of daily living, including toileting, bathing, and transferring in and out of his wheelchair. He is stool incontinent and wears diapers. He also has Type II diabetes, is insulin-dependent, and is on a special diet. He has high blood pressure and high cholesterol. He takes numerous medications.[3] Furthermore, medical personnel advises that he sit in a wheelchair for no more than two hours at a time because of pressure wounds which are susceptible to further skin breakdown and infection. Indeed, medical personnel advised against even transporting the defendant to the courthouse in Springfield, Massachusetts, less than two hours away from ACCF. The defendant requires frequent care to change his position in bed and to change his soiled clothing as his diapers exacerbate the sores and possibility of infection. Additionally, because of problems attaching his urostomy bag, his urostomy currently leaks urine on a constant basis.

---

[3] Counsel also proffered that the defendant has sleep apnea and uses a bilevel positive airway pressure machine each night.

ACCF appears equipped to handle the defendant's medical care. Personnel at the facility have experience with prisoners and detainees with spina bifida, paraplegia, diabetes, and incontinence. The defendant receives his medication and assistance with hygiene, transferring, and repositioning. The facility is treating the pressure wounds, which were present before the defendant was detained. ACCF personnel are working to schedule a consult for his urostomy issue and, once that is resolved, will take him to a local wound clinic for specialized care of the pressure wounds. The medical evidence does not indicate that the defendant is experiencing pain or discomfort beyond what is endemic to his multiple physical issues. Notably, throughout the medical records that were submitted by the defendant, treatment notes indicate that the defendant has repeatedly denied experiencing pain or discomfort.

## II.      Discussion

The district court reviews a magistrate judge's detention order *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). Under the Bail Reform Act, release of a defendant is warranted if there are conditions of release that will reasonably assure the defendant's appearance and the safety of others and the community. See 18 U.S.C. § 3142(e). If, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. In making this determination, the court is to consider the factors set out in 18 U.S.C. § 3142(g), which include the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the history and characteristics of the person, such as his physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, and past

conduct; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The government is required to demonstrate, by a preponderance of the evidence, that a defendant poses a risk of flight or, by clear and convincing evidence, that he is a danger to the community. See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); see also United States v. Mehanna, 669 F. Supp. 2d 160, 160 (D. Mass. 2009). Where, as here, the offenses with which the defendant is charged involve a minor victim, a rebuttable presumption arises in favor of detention. 18 U.S.C. § 3142(e)(3)(E). Once the presumption is triggered, the burden falls on the defendant to produce evidence in rebuttal. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991).

A.    Risk of Flight

The possibility of flight by the defendant is practically nil. The defendant has been a life-long resident of Massachusetts, is in a long-term relationship with his personal caretaker, and apparently has no familial or other connections outside of the area. He also has few assets. More significantly, however, he faces substantial medical challenges which require assistance for all acts of daily living. He is diabetic and insulin-dependent. He is incontinent and his urostomy leaks urine on a constant basis because of problems with his urostomy bag. He is paraplegic and currently has pressure wounds which require regular dressing and prevent him from being able to wear diapers or sit for more than two hours at a time. A caretaker needs to regularly reposition him to avoid infection and further inflammation.

To be sure, the seriousness of the charges and the apparent strength of the evidence may create a strong incentive to flee, but under the circumstances in this case, the defendant's significant health problems make the possibility of flight unrealistic even with assistance.

Consequently, I agree with the magistrate's finding that the defendant has met his burden to rebut the presumption that he is flight risk and the government, in turn, has not established by a preponderance of the evidence that the defendant poses a risk of flight such that no condition or combination of conditions can reasonably assure his appearance as required. See 18 U.S.C. § 3142(e).

### B.    Danger to the Community

The defendant is charged with serious crimes that carry the potential for substantial incarcerative penalties. I concur with the magistrate judge's rejection of the defendant's argument that this is not a "hands-on" offense. If the allegations are true, he certainly did more than "just" look at child pornography. He is accused of affirmatively reaching out over the internet, making contact with a girl (or girls) he knew to be a minor, pretending to be a young female adult to gain her trust, grooming her over a period of time, and ultimately coercing her through threats and extortion to send sexually explicit photographs of herself and to engage in sexual acts which she found painful. On the present record, the government's evidence has not been contradicted.

Nevertheless, I find that the defendant has rebutted the presumption of dangerousness. Prior to his detention, the defendant spent months on release after his state arrest without incident. His home internet service has been disconnected and, according to the evidence submitted by the defendant, he is not able to connect to any other wireless networks in his building. His last alleged contact with any of the known victims was at the end of March 2015. The Massachusetts State Police executed a search warrant for his residence on April 2, 2015, and there is no evidence of further criminal activities or attempts since then though he has obviously been aware of the investigation of his activities.

Additionally, a suitable third-party custodian is available who appreciates the charges against the defendant and is willing to abide by any reasonable conditions that may be imposed, to co-sign an unsecured bond, to assist in supervising the defendant, and to report any violations of the conditions of his release.

The magistrate judge theorized various situations in which the defendant may pose a risk to the public if he were released. In my judgment the evidence available to me does not suggest that those theoretical dangers are substantially present. The Bail Reform Act requires *reasonable* assurance, not a guarantee, of safety. Tortora, 922 F.2d at 884.

Consequently, I conclude that the government has not met its burden to show that no condition or combination of conditions will reasonably assure the safety of the community. See 18 U.S.C. § 3142(e). After considering all of the statutory factors set forth in 18 U.S.C. § 3142(g), I believe the safety of the community can be *reasonably* assured should the defendant be released according to the wide-ranging conditions enumerated below that, in particular, prohibit him from accessing the internet in any way (including by mobile internet or other kind of hotspot), using any device capable of accessing the internet, and leaving his residence where wireless internet service has been disconnected.

To be clear, I make my decision based on the present, known circumstances, which include the defendant's ability to reside in the home he has inhabited for fifteen years and where internet connections can be disabled, service disconnected, and use monitored. If and when the circumstances change, the government may renew its motion for detention. See id. § 3142(f).

### III.   Modified Conditions of Release

The defendant will be released on the following conditions of release:

1) Do not violate any federal, state, or local law while on release;

2) Cooperate with the collection of a DNA sample if the collection is authorized by 42 § U.S.C. § 14135a;

3) Reside at 31 School Street, Apartment 101, Taunton, MA 02780;

4) Immediately advise the court, defense counsel, and the United States Attorney in writing before any change in address or telephone number;

5) Appear in court as required and surrender to serve any sentence imposed;

6) Execute an unsecured bond binding the defendant to pay the United States in the sum of $10,000 in the event of a failure to appear as required or surrender to serve any sentence imposed or a willful violation of any condition of release, such bond to be co-signed by his mother as third-party custodian;

7) Report to Pretrial Services as directed;

8) Surrender any passport to Pretrial Services and do not obtain a passport or other travel document while this case remains pending;

9) Avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to anyone under eighteen years of age;

10) Refrain from possessing a firearm, destructive device, or other dangerous weapons;

11) Restricted to twenty-four-hour-a-day home incarceration except for medical necessities and court appearances and other activities specifically approved by the court;

12) Submit to location monitoring technology as directed by the Pretrial Services office or supervising officer and abide by all of the program requirements and instructions provided by the Pretrial Services officer or supervising officer relating to the proper operation of the technology;

13) Pay for all or part of the cost of the location monitoring program based on his ability to pay as the Pretrial Services office or supervising officer determines;

14) No internet use;

15) Do not possess any computer or other device capable of connecting to the internet, including any tablet, cell phone, or gaming console. All computers and other devices capable of accessing the internet that are brought into the residence must be password protected and the defendant shall not have access to the devices or passwords. Family members' smart phones, tablets, laptops, and other electronic devices capable of accessing the internet must remain in the possession of the family member at all times and must be removed from the residence when the family member is not at the residence;

16) Notify Pretrial Services of any contact with law enforcement within twenty-four hours;

17) Be placed in custody of Filomena Bruneau who agrees (a) to supervise the defendant in accordance with all conditions of release; (b) to make personal, unscheduled visits to the defendant's residence at least twice a week; (c) to contact the defendant by telephone on all days on which she does not visit; (d) to use every effort to assure the appearance of the defendant at all scheduled court proceedings; (e) to accompany the defendant on all approved appointments outside the home unless excused by the supervising officer; and (f) to notify the Court immediately in the event that the defendant violates any condition of his release or is no longer in the custodian's custody;

11

18) Permit access by Pretrial Services and the third-party custodian to any computers, smart phones, tablets, or any other similar electronic device present at any time in the defendant's residence in order to ensure compliance with the conditions of release.

Defense counsel shall submit information about the arrangements that have been made, including transportation from ACCF, to accept the defendant back to the community.[4] This Order will not become effective until the Court acknowledges the defendant's submission. Until that time, the defendant remains in the custody of the USMS.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[4] I understand from medical personnel at ACCF that it may be against medical advice to transport the defendant from Albany to the greater Boston area. While it may be advisable for the defendant to be hospitalized for treatment of his multiple medical issues, my authority to detain the defendant derives only from the Bail Reform Act. I do not have the authority to detain a defendant who seeks to be released simply because the medical staff recommends against his travel.