UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 15-10292-NMG |
| | ) | |
| **JOSEPH DEBRUM** | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S
SENTENCING MEMORANDUM**

Defendant respectfully submits this Reply to the Government's Sentencing Memorandum [D.E. 113]. For the reasons that follow, the Court must be acutely skeptical of the government's assurances that the Bureau of Prisons ("BoP") can adequately care for Debrum's undisputed host of serious medical issues. It should also disregard the government's misplaced arguments that only a sentence in excess of 15 years will adequately assure deterrence and defendant's incapacitation.

**I.     DEFENDANT'S CARE WITHIN THE BUREAU OF PRISONS**

While recognizing the "significant medical challenges and issues" Debrum presents, the government nevertheless tautologically argues that the BoP is "fully equipped to address all of the medical conditions of its inmates and this includes the defendant." Government Sentencing Memorandum at 13. Its suggestion is derived from a letter authored by John Manenti, BoP's Northeast Regional Medical Director ("Manenti Letter"). Notably, Dr. Manenti is not a medical doctor. Apparently, Debrum's health records and medical information have not been reviewed by a BOP M.D., but rather only by a regional administrator who does nothing more than repeat the mantra that BoP has procedures for designating inmates with medical issues. Tellingly, while Dr. Manenti acknowledges the letter authored by Phillip Wise, a former Warden and Assistant Director of the Federal Bureau of Prisons, he makes no attempt to rebut or even address any of

the specific concerns raised by the letter. The Wise Letter is included as Exhibit A to Defendant's Sentencing Memorandum.

Regardless, the Court should be skeptical of any rote assurances by the BoP in light of the continued and serious medical care deficiencies the Office of Inspector General and investigative reporting have documented. *See* Defendant's Sentencing Memorandum at 10, *citing* Office of the Inspector General, U.S. DoJ, *Review of the Federal Bureau of Prisons' Medical Staffing Challenges*, March 2016[1]; USA Today, *Nurses Thrust Into Guard Duty at Federal Prisons*, April 26, 2016.[2] While these deficiencies may not substantially affect the treatment and quality of life of the average inmate, or even the average inmate who has an acute medical issue while serving a sentence, they will have an incalculable effect on Debrum given his profound constellation of disabilities and the challenge the present to proper care.

What is more, the Manenti Letter completely ignores the documented challenges Debrum has *already* experienced while detained as facilities tried – and failed – to meet those challenges. *See* Defendant's Sentencing Memorandum at 5-9. It bears noting that two facilities that held themselves out as specializing in treating inmate health issues, Albany County Correctional Facility and the Onondaga County Jail, both declined to house Debrum once they actually experienced the challenges necessary to properly address his medical needs and activities of daily living. Both facilities had the discretion to refuse to accept Debrum. BoP, of course, does not. Given these documented facts, the Court should be even more doubtful of the BoP's guarantees that it has the ability to address Debrum's issues for up to two decades or more.

Finally, section 3553(a) directs the Court to consider the need for the sentence "to

---

[1] Available at https://oig.justice.gov/reports/2016/e1602.pdf.
[2] Available at https://www.usatoday.com/story/news/nation/2016/04/26/nurses-federal-prisons-public-health-service-security/83517298/.

provide the defendant with needed . . . medical care, or other treatment *in the most effective manner*. 18 U.S.C. § 3553(a)(2)(D). The Manenti Letter does nothing to rebut or even address the stratospheric costs required to provide Debrum medically appropriate care as he approaches the fifteen year mark in his sentence. *See* Defendant's Sentencing Memorandum at 5-13.

For the foregoing reasons, defendant submits that the Court should discount the government's proffer of the Manenti Letter as evidence that Debrum's medical needs can be met like those of any other inmate. It is patent they will not, and the Court should use that simple fact to decline the government's invitation to sentence Debrum beyond the statutorily required fifteen years.

At a minimum, the issues of the conditions under which Debrum will serve his sentence and the availability of appropriate medical care and treatment once he begins serving the sentence are factual ones that the Court must resolve in sentencing Debrum. As defendant noted in his Sentencing Memorandum, undersigned counsel has arranged for Phillip Wise, a former Warden and Assistant Director of the Federal Bureau of Prisons, to be present at the sentencing hearing in order to testify. Defendant submits that the Court should, and indeed must, take testimony from Mr. Wise and, if the government chooses to call him, Dr. Manenti, to properly resolve this issue. U.S.S.G. §6A1.3(a); Fed. R. Crim. P. 32(i).

## II.    DISCUSSION OF MINE-RUN CHILD PORNOGRAPHY RECEIPT AND PRODUCTION CASES IS INAPPOSITE

Section 3553 requires judges to consider the specific facts and defendant before them. The government here, however, seeks to typecast Debrum as a typical defendant who receives and circulates child pornography. Government Sentencing Memorandum at 4-6. But Debrum is not in the mine-run of producers, distributors, or even receivers of child pornography. While his conduct is extremely troubling and merits significant punishment, there is no allegation that

Debrum shared the images with anyone aside from one other victim and a victim's mother. He did not post child pornography. He did not possess any child pornography aside from those images produced from the victims that are set forth in the instant indictment. While the harm to the victims from the acts themselves in significant in and of itself, this is not a case where their images circulating on the internet and each time they are traded or downloaded and thus are continually re-victimized. The harms of Debrum's past conduct are, thankfully, already contained and the government's citations to caselaw and statistics discussing such purveyors and consumers is irrelevant.

### III.     SPECIFIC DETERRENCE AND INCAPACITATION

The government goes on to refer obliquely to statistics on the general propensity of sex offenders to recidivate. Government Sentencing Memorandum at 5. But as pointed out in Defendant's Sentencing Memorandum, Debrum's lack of access to a computer and the internet, given his physical condition, reduces the risk of his acting out to zero, where it will remain the rest of his life. Statistics that may be relevant to other defendants simply do not apply to the unique constellation of issues Debrum presents. Similarly, while it is true and undisputed that "none of his medical issues hampered his ability to commit crimes against children," Government's Sentencing Memorandum at 5 & 13, the government ignores the fact that his medical issues mean that, unlike an average defendant, supervision will ensure that he will be unable to ever recidivate in the future without resorting to incarceration beyond the fifteen year mandatory minimum sentence. On this point, the parties appear to agree. *See* D.E. 106, Transcript of April 7, 2017 Status Conference, at 12 (in proposing that defendant be released pending sentencing over defendant's objection, government suggested to the "that there is -- that the Defendant is not likely to flee or pose a danger" if continued conditions of home

incarceration with conditions prohibiting access to the internet).

## CONCLUSION

For the foregoing reasons, as well as those argued in Defendant's Sentencing Memorandum, Debrum's unique set of circumstances dictate that a sentence of fifteen years followed by ten years of supervised release is a sentence that is "sufficient but not greater than necessary" to achieve justice in this case. No more is required and no more should be imposed.

JOSEPH DEBRUM
By his attorney,


/s/ Timothy G. Watkins
Timothy G. Watkins
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), as well as to U.S. Probation Officer Maria D'Addieco by email, on July 17, 2017.

/s/ Timothy G. Watkins
Timothy G. Watkins