1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MASSACHUSETTS

3


4
     * * * * * * * * * * * *    15CR10292-NMG
5    UNITED STATES OF AMERICA*
                             *
6    VS.                     *    JULY 18, 2017
                             *    3:39 P.M.
7    JOSEPH DEBRUM           *
                             *
8    * * * * * * * * * * * *    BOSTON, MA

9


10          BEFORE THE HONORABLE NATHANIEL M. GORTON

11                     DISTRICT JUDGE

12                      (Sentencing)

13


14   **APPEARANCES**:

15

     FOR THE GOVERNMENT:    SUZANNE SULLIVAN JACOBUS, AUSA
16                          ANNE PARUTI, AUSA
                            United States Attorney's Office
17                          1 Courthouse Way
                            Suite 9200
18                          Boston, MA 02210

19   FOR THE DEFENDANT:     TIMOTHY G. WATKINS, AFPD
                            Federal Public Defender Office
20                          51 Sleeper Street
                            5th Floor
21                          Boston, MA 02210

22   Court Reporter:        Debra D. Lajoie, RPR-FCRR-CRI-RMR
                            1 Courthouse Way
23                          Boston, MA  02210

24

25             Proceeding reported and produced
                by computer-aided stenography

1   18 JULY 2017 -- 3:39 P.M.

2            THE CLERK:  This is Criminal Action

3   No. 15-10292, United States of America v.

4   Joseph Debrum.

5            Will Counsel please identify themselves for the

6   record.

7            MS. JACOBUS:  Good afternoon, Your Honor.

8   Suzanne Sullivan Jacobus on behalf of the

9   United States.

10            MS. PARUTI:  Good afternoon, Your Honor.

11   Anne Paruti, also for the Government.

12            THE COURT:  Good afternoon, Ms. Jacobus and

13   Ms. Paruti.

14            MR. WATKINS:  Good afternoon, Your Honor.

15   Tim Watkins, Federal Public Defender Office, on behalf

16   of Joseph Debrum who is present today.

17            THE COURT:  Mr. Watkins, Mr. Debrum, good

18   afternoon.

19            We have Ms. Patten from Probation.  Good

20   afternoon to her.

21            We are here on the sentencing of

22   Mr. Joseph Debrum.  And I have received and read the

23   presentence report, the Defendant's sentencing

24   memorandum to which an opinion letter of a Mr. Phillip

25   Wise, a retired Assistant Director of Health Services

1   for the Federal Bureau of Prisons, was attached.

2          I've also received the Government's sentencing

3   memorandum to which there were multiple attachments,

4   five victim-impact statements and one opinion letter of

5   a Mr. Manetti, the current Federal Bureau of Prisons'

6   Northeast Regional Medical Director, and also attached

7   to that was an outline of the Bureau of Prisons' care

8   levels and examples; and, secondly, the Federal Bureau

9   of Prisons' "Management of Diabetes Inmates Manual."

10          As I've said before, I've also received and read

11   five victim-impact statements, two of which are from

12   mothers of victims and three others from the victims

13   themselves.

14          Finally, I have received and read the

15   Defendant's reply to the Government's sentencing

16   memorandum.

17          Those are the writings I've received.  Is there

18   anything I didn't mention that I should have received?

19          MS. JACOBUS:  Yes, Your Honor.  There was a

20   sixth impact statement, which was the impact statement

21   of Minor H, and that was received by the Government

22   yesterday, so it was after the Government filed its

23   sentencing memo, and I provided it to Probation, and I

24   believe Probation provided it to the Court.

25          THE COURT:  I do have Minor H's victim-impact

1    statement.  Maybe I didn't count it up right.  I have

2    Minor A, the mother; Minor C, the victim; Minor B, the

3    victim; Minor B, the mother; and Minor H, the victim.

4         MS. JACOBUS:  I'm sorry.  Minor F, yesterday, as

5    in Frank.

6         THE COURT:  Oh, okay.  I didn't hear you.  That

7    one I have not read, but I will receive it, and you may

8    comment on it.  And is that victim in the Courtroom?

9         MS. JACOBUS:  No, Your Honor.  But I do have

10   Minor A and her mother and Minor B, as in boy, and her

11   mother who are both present, and the mothers of both of

12   those minors wish to address the Court at the

13   appropriate time today.

14        THE COURT:  And they will be allowed to do so.

15        But that one Minor F victim-impact statement you

16   may submit, Ms. Jacobus, and if you wish to address it

17   at any point in these proceedings, you may do so.

18        MS. JACOBUS:  Thank you, Your Honor.

19        THE COURT:  All right.  So, before we start, I

20   want to disclose to Counsel my intentions so that they,

21   in turn, might inform your arguments.

22        Mr. Debrum is about to be sentenced for crimes

23   of coercion, enticement and sexual exploitation of

24   children and distribution of child pornography, all of

25   which was conducted over the internet.  Although none

1    of the victims of the -- although none of Defendant's

2    crimes involved physical contact with his unfortunate

3    victims, they were horrific crimes that went a long way

4    toward ruining the teenage years of his victims and, in

5    some cases, rendered permanent psychological damage to

6    them.

7         Defendant will get and deserves a very lengthy

8    prison sentence to be followed by an extensive period

9    of supervised release.  But I am not going to send him

10   to jail for 20 years or more.  He did not commit

11   murder, he is not a terrorist, and he did not

12   physically rape anybody.  Nevertheless, he is going to

13   pay a very severe price for his crimes.  The sentencing

14   guidelines with respect to the crimes he committed are

15   draconian.  In fact, they call for a sentence of life

16   in prison, and I do not intend to follow them.

17        The mandatory minimum in this case is harsh but,

18   in this case, not too harsh.  Defendant deserves every

19   bit of the 15-year mandatory minimum applicable

20   sentence here; and, in fact, it is my present intention

21   to impose a sentence of 17 years so as to emphasize

22   that the mandatory minimum sentence called for by the

23   statute is not the driving force of my sentence.

24        My sentence is based primarily on the despicable

25   and horrendous criminal conduct of this Defendant in

1    connection with these crimes, and it is intended not

2    only to deter Mr. Debrum specifically from ever

3    committing another similar crime, but also generally to

4    deter any other cowardly sexual deviants from doing

5    likewise.   I am also very concerned about the

6    inordinate and excessive cost to the Government of

7    having to feed, house and care for this prisoner when

8    there is, at least at the present time, a much cheaper

9    alternative available.

10           For all of those reasons, I am going to impose a

11   sentence of 204 months of incarceration, unless I am

12   otherwise dissuaded by these proceedings.

13           And with that, I will proceed to deal with the

14   objections that are made to the presentence report,

15   which have been included in the presentence report.  As

16   I understand it, the Government had two objections to

17   the presentence report.  They are both informational,

18   as far as I can tell, and I accept the Probation

19   Officer's response to them.

20           Any comments in that regard, Ms. Jacobus?

21           MS. JACOBUS:  No, Your Honor.

22           THE COURT:  And with respect to the Defendant,

23   there were, I believe, five objections.  Objection

24   No. 1 is informational; and, in fact, the paragraph

25   that it refers to has been amended to include

1   information -- part of the information requested by the

2   Defendant.

3         Objections 2, 3 and 4 are also informational,

4   and the information is of course, therefore, included

5   in the body of the presentence report.

6         And, finally, Objection No. 5 are what I would

7   consider grounds for a so-called variance sentence.

8         So, I don't think any of them need to be dealt

9   with in connection with the establishment of the

10   appropriate guideline range; am I correct, Mr. Watkins?

11         MR. WATKINS:  Yes, you are, Your Honor.

12         THE COURT:  And there are no further objections?

13         MR. WATKINS:  And there are not.

14         THE COURT:  All right.  Then, we will turn, as

15   is required, to the recommendations made in the

16   presentence report for the establishment of the

17   appropriate guideline levels in this case.  And those

18   recommendations start on Page 23 of the presentence

19   report, wherein I am advised that it is the most recent

20   Guideline Manual that applies; that is, the 2016

21   Guideline Manual.

22         And because of the nature of the crimes

23   committed and the specific provisions of the Guidelines

24   related to the sexual exploitation of children,

25   multiple counts involving more than one minor are not

1    to be grouped together pursuant to Section 3D1.2,

2    which is the usual procedure under most of the

3    Guidelines. And therefore, we will consider the

4    several groups of crimes that are involved here and

5    refer to Section 3D1.4 to determine the combined

6    offense level.

7         And, therefore, we start out under the

8    Guidelines, it is the most serious of the counts

9    comprising the group; that is, the determinative

10   calculation under Section 3D1.3, in this case, that is

11   sexual exploitation of children, which calculates the

12   highest adjusted offense level.  That's where we're

13   going to start.

14        Group 1 is the sexual exploitation of children

15   with respect to Minor A, and under -- the appropriate

16   Guideline is 2G2.1, which calls for a base offense

17   level of 32.

18        Do Counsel agree with these findings thus far,

19   Ms. Jacobus?

20        MS. JACOBUS:  Yes.

21        MR. WATKINS:  Yes.

22        THE COURT:  Mr. Watkins.

23        All right.  And then, on top of the base offense

24   level, under this Group, a two-level increase is

25   warranted because the offense involved the commission

1    of a sexual act, so Subsection B(2)(a) calls for a

2    two-level increase.  It calls for another two-level

3    increase because the Defendant knowingly engaged in

4    distribution under Subsection B(3) of the same

5    Guideline, two more levels are added.

6          Because the offense involved material that

7    portrays sadistic or masochistic conduct or other

8    depictions of violence, a four-level increase is

9    warranted under Subsection B(4)(a) of the same

10   Guideline.

11         And, finally, because the offense involved the

12   knowing misrepresentation of a participant's identity

13   to persuade a minor to engage in sexually explicit

14   conduct under Subsection B(6)(a)(ii) of the same

15   Guideline, another two-level increase is warranted.

16         That yields an adjusted offense level of 42 for

17   this Group.

18         Do Counsel have any disagreements with those

19   findings?

20         MS. JACOBUS:  No, Your Honor.

21         MR. WATKINS:  No, Your Honor.

22         THE COURT:  The Court so finds.

23         Then, Group 2 involves the sexual exploitation

24   of children, this time with respect to Minor B.  The

25   same Guideline applies; therefore, yielding the same

1  base offense level of 32.  In fact, everything is the

2  same in this Group, except that there is no two-level

3  increase for distribution, but there is a two-level

4  increase because the offense involved a minor who had

5  attained the age of 12 years but not attained the age

6  of 16 years, and for that, under Subsection B(1)(b) of

7  the same referred-to Guideline, he gets a two-level

8  increase to his base offense level.

9       All the other increases are the same.  So,

10  again, he ends up with an adjusted offense level in

11  Group 2 of 42.

12       Do Counsel agree with those findings?

13       MS. JACOBUS:  Yes, Your Honor.

14       MR. WATKINS:  Yes, Your Honor.

15       THE COURT:  The Court so finds.

16       Then, Group 3 is different.  It is with respect

17  to coercion and enticement of a minor, and this has to

18  do with Minor C.  The Guideline we're using this time

19  is 2G1.3, and there, the base offense level under

20  Subsection (a)(3) of that Guideline is 28.

21       And because the offense involved the knowing

22  misrepresentation of a participant's identity to

23  persuade a minor to engage in prohibited sexual

24  conduct, Subsection (b)(2)(A) of that Guideline calls

25  for a two-level increase.

1          Also, because the offense involved the use of a

2     computer, under Subsection (b)(3)(A) of that Guideline,

3     a two-level increase is warranted.

4          And that means that the adjusted offense level

5     in Group 3 is 32.

6          Do Counsel agree with those calculations?

7          MS. JACOBUS:  Yes, Your Honor.

8          MR. WATKINS:  Yes, Your Honor.

9          THE COURT:  The Court so finds.

10         Then, with respect to Group 4, we're back to

11    sexual exploitation of children, this time with

12    reference to Minor D.  We're, again, dealing with

13    Guideline 2G2.1 and the base offense level for which is

14    32.  This time, we are -- these calculations are the

15    same as Groups 1 and 2, except this time we include

16    both the fact that a two-level increase is warranted

17    because the offense involved the commission of a sexual

18    act and also because, this time around, the fact that

19    the minor attained the age of 12 but not 16 warrants a

20    two-level increase.

21         So, all of those increases that we talked about

22    above apply.  This time, that means that the adjusted

23    offense level is 44.

24         Do Counsel agree with those calculations?

25         MS. JACOBUS:  Yes, Your Honor.

1          MR. WATKINS:  Agreed, Your Honor.

2          THE COURT:  The Court so finds.

3          Then, we're up to now Group 5.  This time it's

4    sexual exploitation of children with respect to

5    Minor F.  We are dealing with the same Guideline,

6    2G2.1, and that has a base offense level of 32.

7          The same add-ons for a minor who had attained

8    the age of 12 but not attained the age of 16, that's a

9    plus two; the fact that the offense involved the

10   commission of a sexual act, another plus two; the fact

11   that the offense involved material that portrays

12   sadistic and masochistic conduct, that involves a plus

13   four addition under Subsection (b)(4)(A); and, finally,

14   because the offense involved the knowing

15   misrepresentation of a participant's identity to

16   persuade a minor to engage in sexually explicit

17   conduct, under Subsection (b)(6)(A)(ii), another two

18   levels are warranted.

19         This time we end up with an adjusted offense

20   level of 42.

21         Do Counsel agree with those calculations?

22         MS. JACOBUS:  Yes, Your Honor.

23         MR. WATKINS:  Yes, Your Honor.

24         THE COURT:  And then Group 6 is sexual

25   exploitation of children, we're dealing now with

1     Minor G, and this is the same as Group 5, and all of

2     the adjustments are the same as in Group 5.

3           So, again, the Defendant ends up with an

4     adjusted offense level of 42.

5           Do Counsel agree with those findings?

6           MS. JACOBUS:  Yes, Your Honor.

7           MR. WATKINS:  Agreed, Your Honor.

8           THE COURT:  And, finally, Group 7 is the sexual

9     exploitation of children, this time dealing with

10    Minor H.  Again, we have the same base offense level

11    under 2G2.1; that is, 32, but we only have added on --

12    add-ons for the fact that the offense involved the

13    commission of a sexual act, that's a plus two, and the

14    fact that the offense involved the knowing

15    misrepresentation of a participant's identity to

16    persuade a minor to engage in sexually explicit

17    conduct.  That's another plus two.

18          But we don't have the attained age or the

19    portrayed sadistic conduct involved this time around.

20    So, the adjusted offense level is 36.

21          Do Counsel agree with those calculations?

22          MS. JACOBUS:  Yes, Your Honor.

23          MR. WATKINS:  Agreed, Your Honor.

24          THE COURT:  And then, by virtue of the

25    multiple-count adjustment, by virtue of the fact that

1    the total number of units involved in all of these

2    groups is 5.5 and the greater of the adjusted offense

3    levels is 44, it means that we increase the offense

4    level by five levels, and that results in a combined

5    adjusted offense level of 49.

6         And then the Defendant is entitled to a

7    three-level downward adjustment for his acceptance of

8    responsibility, which would have yielded a total

9    offense level of 46.  But, pursuant to Chapter 5,

10   Part A, in the comments section, in those rare

11   instances where the total offense level is calculated

12   in excess of 43, the offense level will be treated as a

13   Level 43.

14        Do Counsel agree with all of those calculations?

15        MS. JACOBUS:  Yes, Your Honor.

16        MR. WATKINS:  Yes.

17        THE COURT:  The Court so finds.

18        Then, turning to the Defendant's criminal

19   history, there are no prior convictions, and the

20   Defendant, therefore, has zero criminal history points

21   and falls in Criminal History Category I.  That means

22   that, under the Guideline provisions at all levels, it

23   calls for, under the guidelines, a life-imprisonment

24   sentence.

25        Do Counsel agree with those calculations?

1       MS. JACOBUS:  Yes, Your Honor.

2       MR. WATKINS:  Yes.  All right.

3       THE COURT:  All right.  Now, I'm aware because I

4  have received and read the comprehensive submissions of

5  Counsel as to what your recommendations are, but I will

6  hear oral recommendations, starting with the

7  Government, Ms. Jacobus.

8       MS. JACOBUS:  Thank you, Your Honor.

9       Your Honor, pursuant to 18 United States Code,

10  Section 3771, the Crime Victim Rights Act, Minor A and

11  her mother have a right to be present in Court, and

12  they are both here today.  Minor B and her mother also

13  have the right to be present in Court and both are here

14  today.

15      The Government has notified all of the minor

16  victims and guardians, if any of them are still minors,

17  of their right to be present at the sentencing.  The

18  others that are not present today have opted not to

19  come.  Several have submitted impact statements, which

20  the Court has confirmed that it has received and read.

21  The one outstanding impact statement that the

22  Government received after it filed its sentencing

23  memorandum I've provided to the Court today, which is

24  consisting of one page, which I believe the Court has

25  had an opportunity to review.

1          Additionally, two of the minor victims' parents

2     would like to address the Court, Your Honor, on behalf

3     of their daughters, and they have the right to do so

4     pursuant to the Crime Victims Rights Act.  I would just

5     ask the Court whether or not they might be able to

6     do that now or if you would prefer it to be at the

7     end of --

8          THE COURT:  Whichever the Government would

9     prefer.  They can either speak now or after your

10    presentation.

11         MS. JACOBUS:  Your Honor, I would ask that they

12    have an opportunity to do so now, and with the Court's

13    permission, I've moved one of the podiums to the right

14    side --

15         THE COURT:  Yes.

16         MS. JACOBUS:  -- and if they might be able to be

17    there, I've confirmed with your Court Reporter that we

18    could have a microphone so she could make sure --

19         THE COURT:  That is fine, and if you'll just

20    identify the speakers as they come forward.

21         MS. JACOBUS:  Sure, Your Honor.  I'm going to

22    have Minor A's mother come forward first.  And,

23    Your Honor, to protect the identity of the minors, I've

24    asked them to only identify themselves to you as a

25    parent of Minor A or Minor A's mother, and the same

1    with Minor B, if that's okay.

2          THE COURT:  That's fine.

3          Good afternoon.

4          SPEAKER:  Good afternoon, Your Honor.

5          In May of 2014, my daughter was an innocent

6    16-year-old girl who was just beginning to explore her

7    sexuality.  She went online looking to make friends

8    with other teens who were a part of the gay community.

9    What she found was Mr. Debrum posing as a 21-year-old

10   female named Marlie Bennett.

11         Over the course of several days, Mr. Debrum was

12   able to manipulate enough personal information out of

13   my daughter so that he could force her to do his

14   bidding under the threat of exposing that information

15   publicly.  My daughter did not engage in sexually

16   explicit acts by choice but out of fear.  She became

17   the slave of Mr. Debrum.

18         The sexually explicit acts that my child was

19   forced to engage in by Mr. Debrum were humiliating,

20   sickening and physically painful for her.  And when she

21   could no longer bear the physical and emotional

22   torture, she stepped through her fear and told a

23   trusted adult.

24         The crimes that Mr. Debrum committed against my

25   daughter had a huge impact on both her and our family.

1    The scene of these crimes was her own bedroom in our

2    family home.  A place that was once a refuge for her

3    had become a place of nightmares.  The memories of

4    pain, humiliation and fear became overwhelming as she

5    was forced to live within the same four walls that the

6    crimes occurred in.

7         She became anxious, depressed and hypervigilant.

8    In this state of mind, learning was impossible, and

9    school was something that she had to give up on.  I had

10   hoped that time would help her to heal, but when a year

11   passed and her emotional state had not improved, we

12   made the difficult decision to drastically change her

13   living environment.

14        In the summer of 2015, my then 17-year-old

15   daughter left the only home that she had ever known and

16   moved over 600 miles away in order to relieve herself

17   of the constant reminders of Mr. Debrum and to start a

18   new life.  She even changed her name in order to

19   symbolically leave behind the girl who had been so

20   horrifically victimized.  Due to financial

21   restrictions, my daughter was only to be able to see

22   her parents and siblings a few times a year.  Although

23   this move was a financial and emotional drain on our

24   family, it was the only way that we could think of to

25   give my daughter some peace.

1    In the two years that my daughter lived so far

2    away from us, she missed not only birthdays and

3    holidays with our family, but she grew apart from

4    lifelong friends as they completed high school, started

5    dating and began their lives.  Intimate relationships

6    have been a challenge for my daughter.  Her trust was

7    broken by Mr. Debrum's actions at a time in her life

8    when she was just beginning to discover who she was as

9    a young gay woman.  She did not even start dating until

10   recently.

11   My daughter's latter teenage years were robbed

12   from her by Mr. Debrum so that he could satisfy his

13   twisted desires.  He was well aware of the damage and

14   pain that he was causing an innocent child to endure.

15   Prior to his arrest, I spoke to Mr. Debrum on several

16   occasions pertaining to his crimes against my child.

17   He showed zero remorse, and after e-mailing me

18   pornographic images of my own daughter, he proceeded to

19   tell me that he believed that 16 was old enough, that

20   my daughter was a whore and that the authorities would

21   never arrest a cripple.

22   He had the audacity to attempt to use the same

23   manipulative tactics on me that he had used on my

24   daughter, threatening to post those images publicly for

25   all to see unless I agreed to replace her as his slave.

1   His despicable words and actions show me that

2   Mr. Debrum will go to any length to get what he wants

3   and that he believes that his behavior is acceptable.

4        A full three years after these crimes were

5   committed, my daughter is finally thriving, but that is

6   due to her own strength of character and her

7   unwillingness to allow the actions of this criminal,

8   Joseph Debrum, to destroy her life.

9        She recently graduated from high school, is

10  starting college in the fall and is looking forward to

11  a future career in law enforcement.  However,

12  regardless of her hard work and strength, she will

13  carry pieces of those dark days with her for the rest

14  of her life.  Over the years, when my daughter thinks

15  back to her first sexual experience, it will not be

16  with happiness, it will not even be with humor; when

17  she thinks of the first person who saw the details of

18  her body in an intimate way, it will be the face of

19  Joseph Debrum that comes to mind, not the face of a

20  partner of her choosing.  My daughter's very first

21  experience of a sexual nature was one that she was

22  forced to participate in out of fear, and those

23  memories are permanent.

24        My daughter was given a life sentence at the age

25  of 16 from which there is no true escape.  Therefore, I

1   am asking the Court to please sentence Joseph Debrum to

2   the maximum sentence allowed so that not only will he

3   be punished for his crimes against the innocent

4   children in this case but to protect the other children

5   who he will surely victimize if he is ever free again.

6           Thank you, Your Honor.

7           THE COURT:  Thank you.

8           MS. JACOBUS:  Your Honor, with the Court's

9   permission, the mother of Minor B would like to address

10  the Court and provide an impact statement.

11          THE COURT:  Yes.

12          SPEAKER:  Good afternoon, Your Honor.

13          THE COURT:  Good afternoon.

14          SPEAKER:  I am the mother of Minor B, one of the

15  Defendant's victims.

16          I can't even bring myself to say his name or to

17  glance in his direction because, every time I hear that

18  name, there are the memories of the officer coming to

19  my house and showing me the messages between him and my

20  daughter and showing me the images of what he forced

21  her to do at the age of 13.  No 13-year-old should be

22  exposed to those things in their life.

23          And while his reach was great and affected the

24  lives of all of his victims, they affected the families

25  as well.  I have nightmares, not as often as I used to,

1    but my daughter is on the other side of a glass wall

2    screaming for help.  I can't touch her, I can't speak

3    to her, she can't hear me, and there's nothing I can do

4    to help, and she's alone.  And then, as the dream

5    continues, someone else is in there with her, a shadow,

6    somebody from far away, maybe we can't see them, maybe

7    we don't even know who they really are, but they're

8    hurting her, and there's nothing I can do.

9         And that will never go away.  It might get

10   better with time, but you never know what's going to

11   trigger the memories or the nightmares again.  What the

12   Defendant has done has destroyed a 13-year-old girl.

13   She's now 16.  This should be the best time of her

14   life.  She should be enjoying her friends and her

15   social life and forming those relationships that she's

16   going to have for the rest of her life.  But every

17   single action she takes and every single decision that

18   she makes is clouded by what this man has done to her.

19        When we look at colleges, she's entering her

20   junior year of high school, and she's brilliant.  She's

21   looking at colleges all over the world, and our

22   decision-making for colleges is completely ruined by

23   what he did to her because, instead of looking at, This

24   has a great education plan, this has the major that I

25   want, this would be an awesome city to live in, I'm

1    looking at crime rates for the area.  And while that is

2    an important factor, it should not be the primary one.

3        And everything that she does for the rest of her

4    life, and her mental health for the rest of her life is

5    affected by what he has done, and the mental health of

6    her family members knowing what she has gone through

7    and having to live with those images in our minds of

8    what he did to a 13-year-old girl.

9        Because we will be affected for the rest of our

10   lives, I think it's only fair that he is too.  And I

11   would ask that the maximum amount of time be given to

12   the Defendant because I don't want any other family to

13   have to suffer the way that we have or the way that my

14   daughter has.

15       Thank you.

16       THE COURT:  Thank you.

17       MS. JACOBUS:  Your Honor, in part --

18       THE COURT:  Ms. Jacobus.

19       MS. JACOBUS:  -- in part because of the fact

20   that one of the impact statements was not received in

21   time to be attached as an exhibit to the sentencing

22   memorandum that was provided and submitted to the Court

23   by the Government, I'd just like to read about four

24   sentences of the impact statement of Minor F as in

25   Frank's mother, where she wrote, "I'm a broken-hearted

1    mother.  The violation of my child, the bullying and

2    the threat of harm and shame.  My daughter hasn't been

3    the same, and it has continued to get worse.  She went

4    from being upbeat and always a joker to dreary and

5    quiet or angry.  He" -- the Defendant -- "has given

6    her, her own personal prison sentence to live."

7          Your Honor, the impact that Mr. Debrum's actions

8    and criminal behavior has had on these multiple

9    vulnerable teenage girls is enormous, almost impossible

10   to put into words, the impact it has had on them and on

11   their family.

12         Make no mistake about it, Joseph Debrum, the

13   Defendant before you today, is a repeat child predator

14   who seeks out many different vulnerable victims online

15   while he assumes fictitious identities of a 21-year-old

16   female named Marlie Bennett or a 16-year-old female

17   named Marlie Bennett.  He lies about his age, he lies

18   about his gender, he lies about struggles that he says

19   that he is having with his own sexuality when he

20   pretends to be a female online with these young girls

21   whom he meets in various chat rooms, including a room

22   where individuals or users that are on that chat are

23   discussing suicidal thoughts that either they have or

24   friends or family members may be having.  And he uses

25   this information as leverage against these various

1    victims who live in all different areas of our country.

2         During most, if not all, of the Court events

3    that have been held before Your Honor in this case,

4    Mr. Debrum has repeatedly and continuously focused not

5    on the facts of this case, not on the girls' lives that

6    he has repeatedly victimized but, instead, on his

7    medical conditions and the hardships that he faces and

8    may potentially face while he's incarcerated.

9         Your Honor, it's time to focus on the horrific

10   acts of the case and on the true victims of this case

11   and what he did to them, which is why today we focus on

12   Minors A and B, on C and D, on F and G and H, the seven

13   teenage girls who this controlling, manipulative and

14   fraudulent person, this man pretended to be a woman or

15   a teenage girl over the period of ten months between

16   2014 and 2015 when he showed absolutely no remorse to

17   his many victims who he coerced and enticed repeatedly,

18   when he produced child pornography or forced these

19   young girls to produce child pornography of themselves,

20   of their own sex acts that they were performing on

21   themselves, in some cases were painful to these young

22   girls.

23        And when they expressed their pain to Mr. Joseph

24   Debrum, his reaction wasn't one of sorrow, of sympathy.

25   No.  His reaction was he did not care.  He wanted them

1   to continue to perform painful sexual acts and insert

2   objects, markers, Sharpies, pens and in at least one

3   case a toilet handle brush into their vaginas or their

4   anuses and to take pictures and capture these horrific

5   sexual acts and to e-mail them and send them

6   electronically to Mr. Debrum, or he himself would watch

7   them perform these acts live and capture them with his

8   own computer or his own iPhone.

9        His callous disregard and indifference to these

10  young girls is almost beyond comprehension.  He, as a

11  she, took the extremely painful and personal

12  information that these victims confided to him in, and

13  he used it as leverage against them by threatening to

14  expose them, by threatening to expose the pictures that

15  either he himself took or the ones he forced them to

16  take of themselves and to send to him.

17       He threatened to expose these young girls by

18  going to the authorities, to the police, by going to

19  the parents of these young girls, by going to the

20  school that they attended -- or the schools, by harming

21  himself when they threatened and to, quote, cut

22  himself, as Marlie Bennett if they didn't continue to

23  meet his sexual demands.

24       Contrary to what the Defendant would have you

25  believe, Your Honor; namely, that he himself should be

1    looked at with extreme sympathy and as a victim, the

2    only real victims in this case are the seven teenage

3    girls that Joseph Debrum repeatedly tormented over that

4    period of time, all the while hiding behind a camera.

5        I would suggest to the Court that the evidence

6    has shown that the Defendant targeted the most

7    vulnerable of our society; namely, minor children, for

8    his own perverted sexual gratification.  When he

9    captured these live sex acts of his victims, he would

10   make comments to his victims, what he liked, what he

11   didn't like, what he wanted them to do, or he would

12   direct them to do more.  He demanded, and he threatened

13   his victims on multiple occasions.  This 39-year-old

14   man, Your Honor, knew exactly what he was doing and

15   knew exactly how old his various victims were.  He was

16   37 to 38 during the relevant periods of time outlined

17   in the indictment, while these girls were between the

18   ages of 14 and 16 years old.

19       And he did more, Your Honor.  He also

20   distributed child pornography.  There were child

21   pornographic or sexually explicit photographs of

22   Minor D, as in Darlene, that this Defendant,

23   Joseph Debrum, again, lying and pretending to be a

24   female named Marlie Bennett, distributed to Minor C, as

25   in Charlie.  When he did this, the Defendant was

1    pretending to be a 16-year-old teenage girl, and he

2    distributed child pornography of one victim to another

3    victim, and what did he include in the caption when he

4    sent a naked photograph of that minor with a toilet

5    brush inserted into her vagina or anus?  The caption

6    was, "That was her face from what I had her do."  At

7    that time, Your Honor, Minor D was a 14-year-old middle

8    school eighth grade girl.

9         He has been convicted of distribution of child

10   pornography to Minor A's mother, and you heard from her

11   this afternoon, Your Honor.  The caption that he put

12   when he sent several photographs to Minor A's mother,

13   including one photograph that was sexually explicit in

14   nature with an object inserted into her buttocks area,

15   "I made your daughter do pictures."  This Defendant

16   went further.  He tried to convince Minor A's mother to

17   switch places with Minor A and become the Defendant's

18   sex slave.

19        In chats, in texts to his various victims as

20   Marlie Bennett, he mocks the fact that he is

21   victimizing them.  He doesn't care.  He stole the

22   innocence of these victims, Your Honor, without any

23   regard to their well-being, whether that was mental,

24   emotional or psychological.

25        Your Honor, the Defendant -- the Government

1    feels it's incumbent to address a few things that have

2    been outlined in the Defendant's sentencing memorandum.

3    The first would be the Defendant's five-page response

4    to the Government's sentencing memorandum that was

5    filed at about 8:00 last night by defense Counsel where

6    he's challenging and asking this Court to disregard and

7    completely set aside the letter that was submitted as

8    Exhibit No. 3 to the Government's sentencing

9    memorandum, the letter of the current, not a former,

10   not a retired, not an individual that has been out of

11   Bureau of Prisons setting for a decade and a half, as

12   the defense witness -- or individual, Mr. Wise, has

13   been, but Mr. Watkins asks the Court to set aside and

14   disregard the current Bureau of Prisons' Medical

15   Director of the Northeast Region, John Manetti's

16   letter.

17          I would suggest to the Court this Court should

18   absolutely consider that.  This is an individual who is

19   currently responsible for overseeing the Bureau of

20   Prisons in the New England area.  He has first-hand

21   current information.  He explains, Mr. Manetti does,

22   that is, that the Bureau of Prisons can provide

23   adequate healthcare for prisoners like this very

24   Defendant, prisoners who have significant, acute or

25   chronic medical conditions, and can provide the

1   necessary and appropriate care for individuals just

2   like this Defendant.

3       The Bureau of Prisons is fully equipped to do

4   so, Your Honor.  None of the Defendant's medical

5   issues, none of his medical diagnosis and none of his

6   medical conditions ever hampered Joseph Debrum's

7   ability to commit these horrific and heinous crimes.

8   The Bureau of Prisons is aware of the medical

9   conditions and the diagnoses that are associated with

10  the Defendant.  They received information that

11  Mr. Watkins provided several months ago.

12      The Defendant argues about the difficulties the

13  Defendant has faced while he's being held over the last

14  approximately 12 weeks from the date of the plea until

15  today.  It's important to point out, Your Honor, that

16  he was being held pretrial in a facility that is not a

17  Bureau of Prisons facility.  The Bureau of Prisons has

18  outlined how it could care for the Defendant.  It talks

19  about the levels of care, to four different levels,

20  where this Defendant could potentially be in the

21  highest level of care, given his chronic medical

22  issues.

23      The Government fully recognized that the

24  Defendant has been dealing with life-long battles

25  relating to his medical condition, and we took that

into consideration when we formulated what we believe
is an appropriate sentence.  The Government is not
asking for a life sentence.  I understand that, that is
the advisory guideline range either on a plea or after
trial.  The Government is asking for less than that.
But we are not asking for the lowest applicable
sentence that would be warranted if this Defendant was
standing before you on one single count of sexual
exploitation of a minor.

This is not the case of a single victim.  This
is not the case of an isolated incident.  This is
multiple victims over a ten-month period of time that
this man manipulated, coerced, induced, enticed and
produced child pornography of.

Mr. Manetti also stated that, if the Defendant
is designated to a general-population institution, that
he would likely be assigned to a chronic care clinic,
Your Honor, and that inmates enrolled in chronic care
clinics are seen as often as medically necessary.  I
would suggest to the Court that the Court should credit
the information provided by the Bureau of Prisons'
current Medical Director of the Northeast area that
they can properly and adequately care for all of the
Defendant's medical needs, instead of relying on an
individual who has been retired from the system for

1    15 years who was an Assistant Director of the Bureau of

2    Prisons for approximately three years from 1999 to

3    2002.

4         Secondly, Your Honor, the Defendant asks this

5    Court to look at three other cases that were in this

6    Courthouse where individuals received sentences on

7    sexual exploitation cases.  What's important to point

8    out to the Court, Your Honor, is that the Defendant

9    omitted from that, that in each of those three cases,

10   there were plea agreements involved, in each of those

11   cases, the total offense level of the Defendant was

12   lower than Mr. Debrum's.

13        In the *Pallazola* case, the total offense level

14   was 39; in the *Hiersche* case, H-i-e-r-s-c-h-e, the

15   total offense level was 37; and in the *Shipps* case,

16   S-h-i-p-p-s, which was before Your Honor, the total

17   offense level was a 39.  This man's total offense level

18   is off of the sentencing grid.  It is so high, that it

19   has to be automatically reduced to the highest number

20   that's on that grid, which is 43.  That's a factor that

21   you should take into consideration.

22        Secondly, Your Honor, on the *Pallazola* case, as

23   I say, one victim, one count of sexual exploitation.

24   And in that case, it was a (c) plea to a range of 25 to

25   27 years.  Because of the fact that the Defendant had a

1    prior conviction, he faced a 25-year mandatory minimum.

2         In the *Hiersche* case, it was a (c) plea to a

3    joint recommendation of 15 years.  The Defendant points

4    out in his sentencing memorandum that the victim in

5    that case was the Defendant's own nine-year-old

6    daughter and a teenage niece.  So, there were seven

7    counts of sexual exploitation, one count of receipt of

8    child pornography and one count of possession of child

9    pornography.  Here we have more victims, more counts.

10        In the *Shipps* case, Your Honor, that was a

11   (c) plea to a 19- to 23-year range.  In that case,

12   Your Honor, it's important to point out that, that plea

13   was contingent on that Defendant pleading guilty in

14   State Superior Court to aggravated rape.

15        So, if we're going to put this in context, I

16   think it's important to point out all the information

17   that is conveniently missing from the Defendant's

18   sentencing memorandum in terms of sentence disparity

19   between individuals.

20        Additionally, Your Honor, the Defendant has

21   pointed out in his sentencing memorandum and again in

22   his response information that was provided to the Court

23   at an April 7th, 2017, status conference.  In both the

24   sentencing memorandum and the response, the Defendant

25   has misconstrued and taken out of context the statement

1    made by the Government at that status conference before

2    the Court.

3         The Government does believe the Defendant is a

4    danger and poses a danger to the public.  At that

5    status conference, Your Honor, as the Court is I'm sure

6    well aware, the issue that was being centered on was

7    the fact that the Defendant had filed a motion for a

8    Rule 11 hearing but that the United States Marshals

9    Service had been unable to secure a pretrial facility

10   to house the Defendant at that time.  After I provided

11   the Court with the procedural background of the case,

12   the Court asked whether the Government would be looking

13   to move and continue a Rule 11 until a housing facility

14   was located.

15        The Government did not want to do that,

16   Your Honor.  Once the Defendant filed a motion for a

17   Rule 11 hearing, the Government wanted to have that

18   Rule 11 hearing.  That would finally provide some

19   finality and closure to the multiple victims in this

20   case.  Although at that time the Government had been

21   preparing for trial, the Government didn't want these

22   victims to have to relive the horrific, horrendous

23   criminal acts by this Defendant upon them to prepare

24   for trial if they didn't need to because that would be

25   unnecessary.

1      So, I would suggest to the Court that the

2  statements the Defendant makes does not accurately put

3  into context the reason why the Government was saying

4  that we could do the Rule 11.

5      As the Court is aware, the Defendant was out on

6  pretrial release for a significant period of time after

7  he appealed his detention order, and Judge O'Toole

8  released him.  We were then getting ready to go to

9  trial, and the Defendant filed a motion for a Rule 11.

10  So, I think it's important to make sure that, that

11  information is accurately represented to the Court.

12      Your Honor, the Government outlined in its

13  sentencing memorandum not only the facts of the case

14  but the 3553(a) factors that the Court must take into

15  consideration when fashioning what you believe to be an

16  appropriate sentence for the Defendant in this case.

17  This case is nothing short of horrific.  The Government

18  clearly has taken into consideration the Defendant's

19  various medical ailments and issues when we fashioned a

20  recommendation that we believe is fair, is just, is

21  consistent with the 3553(a) factors.

22      I also understand that there will be an enormous

23  cost on the Government, that the Government would bear

24  to incarcerate the Defendant, and the Defendant uses

25  that and the medical issue as his two primary reasons

1   to support his argument of why he should receive the

2   absolute lowest, the absolute minimum sentence that's

3   allowable by law.  To suggest that this Court should

4   impose the minimum sentence available because of the

5   fact that it will cost the Government tens or hundreds

6   of thousands of dollars per year I would suggest to the

7   Court completely ignores and sets aside the magnitude

8   of the Defendant's criminal behavior.

9        For the reasons that the Government outlined in

10  its sentencing memorandum, based on the egregious

11  nature and the facts of this case, the calculating

12  manipulative and deceptive actions that this child

13  predator committed on many young women, the untold

14  heartache that it has caused on each of these young

15  girls and on their families, and based on the 3553(a)

16  factors, including specific and general deterrence,

17  it's important for this Defendant to understand the

18  seriousness, the high cost that his criminal actions

19  are going to cost him.

20       It's also very important to point out to other

21  individuals who may be in the same or similarly

22  situated situation as the Defendant that, if they

23  commit the same type of crimes that this Defendant

24  committed over and over again over a ten-month period

25  of time, that they too will stand before the Court and

1    face significant and serious penalties.

2            For all of the reasons that we have outlined in

3    our memorandum and the reasons that I've had an

4    opportunity to provide to the Court today, the

5    Government would recommend a period of 288 months'

6    incarceration, which is 24 years, followed by a

7    five-year period of supervised release.

8            We would ask that the Defendant have no direct,

9    indirect or third-party contact with any of the minor

10   victims that are outlined and identified by letter in

11   the superseding indictment, both during the pendency of

12   his incarceration and during the pendency of his

13   supervised release.

14           We would ask for forfeiture, as outlined in the

15   superseding indictment, and we would ask for a $1,500

16   mandatory special assessment.  I will tell the Court

17   that we did check, pursuant to the statute, about

18   restitution requests, and there have been no

19   restitution requests that have been made.

20           And I thank the Court for its time and its

21   attention.

22           THE COURT:  All right.  Before you sit down,

23   Ms. Jacobus, I'm unaware of the forfeiture allegation.

24           MS. JACOBUS:  The superseding indictment,

25   Your Honor, has two forfeiture allegations.  One is

1    the coercion and enticement of a minor under

2    18 United States Code 2428, and the second is the

3    sexual exploitation of children forfeiture allegation,

4    which is pursuant to 18 United States Code 2253.  In

5    this case, Your Honor, there was a search warrant that

6    was executed at the Defendant's residence in April of

7    2015, and as a result, various items were seized,

8    including electronic devices, and they were later

9    forensically examined, and there was evidence of the

10   Defendant's criminal activity that were found on the

11   laptop and the phone of the Defendant.

12        THE COURT:  And are they identified in a

13   submission?  When we get to that point, I will ask the

14   Government to put that on the record.

15        MS. JACOBUS:  Okay, Your Honor.

16        THE COURT:  Unless you can point me to some

17   pleading that I can incorporate.

18        MS. JACOBUS:  I will check that, Your Honor.

19        THE COURT:  All right.

20        MS. JACOBUS:  And I'll report back before the

21   Court gets off the bench.

22        THE COURT:  Thank you.

23        Mr. Watkins.

24        MR. WATKINS:  Thank you, Your Honor.

25        I appreciate the Court's comments at the

1    beginning of the sentencing about the sentence that it

2    was inclined to impose.  And for that reason, I'm going

3    to focus my arguments at really why 15 years is a

4    reasonable sentence, where 17 years will be too much.

5    There's really not doubt, I have never tried to

6    minimize, nor has Mr. Debrum tried to minimize, the

7    seriousness of what happened here.

8              This is, in essence, every parent's worst

9    nightmare is that their child who becomes sexually

10   curious goes onto the internet, to run into somebody

11   that pretends they are someone who they are not and

12   begins the kinds of activities that Mr. Debrum engaged

13   in here, horrific, heinous, you can call them all that

14   you want.  They are very, very serious and some of the

15   more serious kinds of crimes the Court might have seen

16   before it.

17             But then one looks at Mr. Debrum and finds out

18   who Mr. Debrum actually is and how we got to the point

19   where he's doing those kinds of crimes.  There is no

20   excuse, and he does not give any excuse.  Quite the

21   opposite, as this Court knows, he moved -- I, on his

22   behalf, asked that he go into custody immediately upon

23   his plea of guilty, over the Government's objection, so

24   that he could begin serving the sentence, taking the

25   medicine for what he has done.

1    Even before that, he was on 18 months of home

2    incarceration that truly was home incarceration.

3    Between his physical disabilities and the kinds of

4    conditions that he had, he was a prisoner in his own

5    home even before he volunteered to go into custody

6    before this Court.

7    So, indeed, Mr. Debrum has given every

8    indication of his acknowledgement of the seriousness

9    and of the harm that he did.  He's going to speak

10   directly to the Court at the end of this hearing, and

11   the Court can hear further about that issue.

12   But then one looks at Mr. Debrum's physical

13   characteristics, which the Court is required to take

14   into account.  There is no dispute that they're

15   extraordinary.  Extraordinary understates it.  Indeed,

16   they are unique.  They are so unique, that they require

17   a very, very different kind of sentence before this

18   Court than these kinds of crimes would otherwise

19   require.  I know the Court has already factored that

20   in, and it's clear from the Court's comments regarding

21   a 17-year sentence that, that is indeed what the Court

22   has done.  And that is wise.  That's correct.  That is

23   what the Sentencing Commission requires, that in the

24   unusual, extraordinary, unique circumstances, that the

25   Court tailor the sentence to reflect exactly all of the

1     goals of sentencing.

2          So, what are the goals of sentencing in this

3     case?  The victims and the mothers, quite rightly, say,

4     We want to make sure that no other person is harmed by

5     this.  That is solved.  That has been demonstrated to

6     be solved.  Once the internet is taken away from

7     Mr. Debrum who is a shut-in at home and will always be

8     a shut-in at home, that is solved.  Mr. Debrum will

9     never be able to commit the kinds of crimes that he

10    committed over the internet.

11          It is beyond any kind of doubt that he could

12    commit these kinds of crimes in person.  His physical

13    stature before the Court today, what the Court knows

14    about his physical disabilities, is beyond any dispute,

15    that he could not commit these crimes if he were met in

16    person.  So, we are not talking about incapacitation.

17    The reason I mention that is because that, indeed, is

18    where the sentences go up above the 20-year range that

19    the Court has marked as significant in here.  That is

20    what we see, that is what I cited in -- on my cases is

21    that is where it is required, where incapacitation

22    becomes the overriding issue.  It's simply not present

23    with Mr. Debrum.

24          Similarly, is any kind of deterrence to him

25    necessary?  The answer, again, is no.  He will be

1   deterred by the body he lives in.  He will be deterred

2   by the fact that he is going to do 15 years of very,

3   very difficult time.  So, that is not a significant

4   reason to go above the mandatory minimum.

5          Really, where we are is retribution.  And it

6   is -- it is a factor the Court should consider, called

7   the seriousness of the offense by the Guideline, but

8   that -- it is really what it is, it is retribution,

9   What is Mr. Debrum's just desserts?  Mr. Debrum has had

10  physical challenges that none of us would wish on our

11  worst enemy.  He's had them since birth.  He's been

12  paralyzed really for life.  He fights major

13  life-threatening illnesses as he goes along in his

14  lifetime.  He constantly suffers from pressure wounds,

15  any one of which could develop to the point that it

16  becomes fatal to him.

17         He suffers indignities every single day of his

18  life that none of us would want to encounter even in

19  one day of our lives.  He suffers incontinence of

20  urine.  He smells all the time.  He deals with the

21  physical consequences of that, which means that he

22  develops more infections because of his constant

23  leakage of urine.  If that were not enough, he's

24  incontinent of stool at the same time.  He wears

25  diapers.  He wears them all the time.  He is required

1    to have other people around him who can clean up after

2    him.  He cannot function in the activities of daily

3    living really without anybody being around him.  He is

4    as much a prisoner in his own body as anyone could

5    possibly be.

6          The question then becomes:  How much more

7    retribution does one want to impose on someone like

8    Mr. Debrum?  Well, let's look exactly at those 15 years

9    that he must serve regardless of what the Court --

10   regardless of what I or an outside onlooker might think

11   is proper.  Look at those 15 years, and I think, quite

12   rightly, both Ms. Jacobus and I have identified the

13   dispute.  The Bureau of Prisons, in a letter, which I

14   have described as rote and would continue to describe

15   as rote, says, Of course, we can take care of him, we

16   can address every single one of those conditions that

17   he has, we have had people in those kinds of conditions

18   in the past.  I do not doubt that, that is true.

19         What they don't talk about in that letter, what

20   Mr. Wise has talked about and what the Court can hear

21   from Mr. Wise, if the Court wishes to, is the realities

22   of everyday living, the activities of daily living.

23   It's the little indignities that result in serious

24   medical problems.  At best in the next 15 years,

25   Mr. Debrum is going to be subject to medical neglect.

1    It is simply a fact of this world that an institution

2    such as the Bureau of Prisons, no matter which care

3    facility he goes to, is simply not equipped with the

4    resources to attend on a daily basis to dry Mr. Debrum,

5    to make sure that he's properly sanitized, to make sure

6    that dressings are changed sometimes on a twice-a-day

7    basis simply to maintain the kind of health that all

8    the rest of us take advantage of.  It is simply -- that

9    is the best-case scenario, is that he will be subject

10   to that kind of neglect over the next 15 years.

11        That is not a circumstance that this Court

12   ordinarily comes into where sentencing a Defendant to

13   prison, where they are able-bodied, where they will be

14   able to go out into the yard to play soccer, to play

15   volleyball, to work on an everyday basis.  Mr. Debrum

16   will not.  It is very likely -- it is simply possible

17   and very likely that he will be in solitary confinement

18   for a significant period of time.  And, again, Mr. Wise

19   would testify to this.  I believe Mr. Manetti, if he

20   were called to testify, would say the same thing, that

21   because of the coalescence of the kinds of offenses

22   that Mr. Debrum has committed and his medical

23   conditions, he will become a target of other inmates

24   there who desire to do something to him because of the

25   kinds of crimes he is accused of and has been convicted

1    of, while at the same time completely unable to defend

2    himself in any kind of means.

3          In addition, he will be required, as both

4    Mr. Manetti and Mr. Wise agree, to have a companion,

5    another inmate who will deal with his activities of

6    daily living and help him be medically -- the

7    activities of daily living that will help him be

8    medically stable.  That is a situation that itself is

9    ripe for abuse.  One can hope that he finds a

10   kind-hearted inmate who will treat him with dignity and

11   treat him with humanity.  But it is also certainly

12   possible that he will find somebody who has found an

13   opportunity to extort Mr. Debrum for more money to

14   provide him with the kinds of care, to simply further

15   neglect his kinds of needs.

16         I am not, unlike Ms. Jacobus's allegation here,

17   I am not trying to make Mr. Debrum into a victim.  He,

18   indeed, was a perpetrator of here.  But by the same

19   token, one -- this Court must take into account the

20   kinds of physical circumstances and the way Mr. Debrum

21   will serve his time once he gets into the Bureau of

22   Prisons.  These things really are beyond dispute.

23         I would suggest -- I know the Court has already

24   indicated that it's taking into account these kinds of

25   issues that I have raised in its 17-year sentence that

1    it's inclined to impose.  I think the Court really

2    should take testimony from Mr. Manetti if the Court

3    wants, from Mr. Wise, to see whether these two years

4    are really necessary, whether these two years are going

5    to be detrimental in the circumstances of this case,

6    whether the costs of those two years, which of course

7    will be when Mr. Debrum is in his late fifties, are

8    worth the kind of extra incremental increase in

9    retribution that they would bring to the case.

10          So, Your Honor, again, I recognize that the

11   Court has given its indication, and it's clear the

12   Court has read all of the pleadings, and I do not want

13   to continue on at any further length.  Mr. Debrum is

14   prepared to speak with the Court.

15          For the reasons I've outlined, I think the Court

16   should go down to the 15-year mandatory minimum.  It is

17   not probation, it is not just a few years; it is a

18   decade and a half that will take Mr. Debrum into his

19   mid-fifties if he survives.

20          I would agree with the Government that no

21   restitution should be imposed.  The mandatory special

22   assessment is non-waivable.  No fine should be imposed.

23   To the extent I can streamline things later, Mr. Debrum

24   has no opposition to forfeiting the computer and the

25   cell phone that were found at his home.  I would ask

1    the Court to consider the imposition of a 15-year

2    sentence with the appropriate supervised release to

3    follow.  I will note one final matter.  I have gone

4    over the conditions of supervised release proposed by

5    the Probation Department as part of the proposed

6    judgment to the Court.  I've gone over these with

7    Mr. Debrum.  We have no opposition to any of those

8    conditions or all of those conditions being imposed at

9    the -- as part of his condition of supervised release

10   once released.

11            THE COURT:  Thank you, Mr. Watkins.

12            Does the Defendant wish to address the Court

13   before sentence is imposed?

14            THE DEFENDANT:  Yes, please, Your Honor.

15            THE COURT:  You may do so.

16            THE DEFENDANT:  Thank you.

17            I would like to say to the victims today that I

18   regrettably and unnecessarily lied and hurt them.  In

19   addition to their families, friends and also to the

20   victims and to my family and friends, that I am

21   wholeheartedly sorry for my actions.  I know that there

22   are no words, no sorrys or apologies that can take away

23   or erase what I have said and done, but I am truly

24   sorry, and not a day goes by that I don't reflect on

25   the incidents that led ourselves and myself here today.

1    I hope in time wounds can heal and the people I hurt

2    can find happiness, good health and success in

3    whichever they choose to achieve in their lives.

4            I do wish to give a heartfelt thank you to my

5    attorney and his staff for helping me through this

6    time.  And additionally, I would like to give a

7    heartfelt thank you to the judiciary and to local,

8    state and Federal law enforcement for being just but

9    always professional and fair towards me.

10           Thank you very much for allowing me to speak,

11   Your Honor, and to the Court.

12           THE COURT:  All right.  Do Counsel know of any

13   reason why sentence ought not to be imposed at this

14   time?

15           MS. JACOBUS:  No, Your Honor.

16           MR. WATKINS:  No, Your Honor.

17           THE COURT:  All right.  Then, please stand -- or

18   rather, you may not -- you don't have to stand.

19   Obviously, you can't.  But I will respond to your

20   allocution, to your Counsel's statement and to the

21   statements of the victims.

22           I first want to compliment the mothers of the

23   two victims that had the courage to stand up today and

24   to address this Court.  It's seldom that the Court has

25   victims that are willing to come forth and speak in

1    public about the horrific crimes that have been

2    committed by the person standing before this Court.

3            Usually the Court has only itself to think about

4    what the victims would want the Court to do and has to

5    take into account that without victims being present,

6    for usually good reasons.  They don't want to relive

7    what they went through and what their family and loved

8    ones went through.  So, I do want to compliment the

9    mothers of Victims A and B who both had the courage to

10   address this Court, and it is important to the Court to

11   hear from victims.

12           This is a horrific case that the Court is

13   thankful that it doesn't deal with similar situations

14   on a regular basis.  There are no excuses to the

15   conduct that I am about to sentence this Defendant for.

16           I stated at the outset where I intended to go,

17   subject to this hearing, and I can say that the

18   realization of hearing from the victims has had an

19   impact on this Court, although I was perfectly aware of

20   the statements.  In fact Minor A's statement was

21   submitted to me in writing before she made it.

22   Victim -- the mother of Victim B's was not.  But it has

23   an impact on me, and it is going to impact this

24   sentence by a small degree.

25           I still am of the opinion that the Guidelines in

1    this case are skewed.  They call for a life sentence,

2    which I do not think is warranted.  There are

3    criminal -- very few criminals that I've dealt with

4    over my 25 years on the bench that warrant lifetime

5    imprisonment.  And, fortunately, I have had not had to

6    impose that sentence very frequently.

7        That doesn't for a moment decrease the

8    seriousness of this sentence.  There can't be much

9    worse a crime than those committed by this Defendant on

10   innocent and vulnerable young girls and women who were

11   subject to horrific crimes.

12       So, having said that, and having considered all

13   of the factors, including the tremendous cost to the

14   Government to care for this particular Defendant and

15   also having considered and taken into account the

16   statements of both of the officials of the Bureau of

17   Prisons, the individual who formerly worked for the

18   Bureau and those who work for it now, I am absolutely

19   satisfied that the Bureau of Prisons can care

20   adequately for this Defendant, and that is not a prime

21   mover of this sentence.

22       At the same time, the Government is going to

23   incur an unnecessary and absurdly high cost to care for

24   this Defendant over the next many years, and that is

25   something it ought not have to do as well.

1          Having said all that, pursuant to the Sentencing

2     Reform Act of 1984, and having --

3          MR. WATKINS:  Judge, I'm sorry to interrupt.

4     Before the Court pronounces sentence, I just want to

5     make it clear, in case this case is reviewed by the

6     First Circuit, that I proffered Mr. Wise to testify

7     concerning whether the Bureau of Prisons will be able

8     to properly care for Mr. Debrum.

9          The Court has made a particular ruling.  I

10    proffered him to say that, that indeed is not going to

11    be the case.  To the extent the Court is making a

12    finding there, I have offered Mr. Wise.  I again offer

13    him as testimony for the Court to resolve.

14         THE COURT:  I'm not sure what you're asking me

15    to do.  I haven't made any finding that the Bureau of

16    Prisons cannot care for him.  What are you saying?

17         MR. WATKINS:  That is what I'm saying.  The

18    Court I think just said that, having reviewed both

19    Mr. Wise's letter and Mr. Manetti's, that you were

20    confident that the Bureau of Prisons could care for

21    Mr. Debrum.  I have proffered, through Mr. Wise, that

22    that is not accurate.

23         THE COURT:  Well, all right.  You're entitled to

24    your statement, and I've taken it into account, and

25    I've determined that I believe the Bureau of Prisons

1   can care for this Defendant over an extended period of

2   time.   To the extent that you need that for the record

3   on your appeal, you have it.

4        Pursuant to the Sentencing Reform Act of 1984,

5   and having considered the sentencing factors enumerated

6   in Title 18 of the United States Code, Section 3553(a),

7   it is the judgment of this Court that you,

8   Joseph Debrum, are hereby committed to the custody of

9   the Bureau of Prisons to be imprisoned for a term of

10  216 months.   The term consists of terms of 216 months

11  on all counts, all sentences to be served concurrently.

12       The Court makes a judicial recommendation that

13  you be designated to an institution commensurate with

14  security where the Bureau of Prisons can afford

15  appropriate medical care for your documented medical

16  needs.   The Court also makes a judicial recommendation

17  that you be designated to an institution commensurate

18  with security where you can participate in sex offender

19  treatment.

20       Upon release from imprisonment, you shall be

21  placed on supervised release for a term of seven years.

22  This term consists of terms of seven years on each

23  count, to be served concurrently.   Within 72 hours of

24  release from custody of the Bureau of Prisons, you

25  shall report in person to the district to which you are

1    released.

2         I would like Ms. Jacobus now, with respect to

3    forfeiture, to read into the record, which will be

4    adopted as -- with respect to what precise property is

5    to be forfeited by this Defendant.

6         MS. JACOBUS:  Your Honor, during the time that

7    the defense Counsel was addressing the Court, we

8    reached out to our Forfeiture Unit, and they have asked

9    us to request that the Court order forfeiture, as

10   alleged in the superseding indictment, and that the

11   Asset Forfeiture Unit will file tomorrow.

12        Specifically I will tell the Court that any

13   electronic devices that were seized from the

14   Defendant's residence at the time of the State search

15   warrant executed in this case, the Government is

16   seeking that they be seized.  That includes I know a

17   laptop computer and also an iPhone of the Defendant.

18        THE COURT:  And those will be identified in the

19   submission of the Government to be received by the

20   Court tomorrow?

21        MS. JACOBUS:  Yes, Your Honor, they will be

22   identified.

23        THE COURT:  Okay.  And those items, as

24   identified, will be forfeited.

25        MS. JACOBUS:  Thank you, Your Honor.

1          THE COURT:  Now, while under the Probation

2    Office's supervision, the Defendant shall comply with

3    the following terms and conditions:  First, you must

4    not commit another Federal, state or local crime;

5    second, you must not unlawfully possess a controlled

6    substance.  Drug-testing conditions are suspended based

7    upon the Court's determination that you pose a low risk

8    of substance abuse.

9          You must cooperate with the collection of a DNA

10   sample, as directed by the Probation Office, and you

11   must comply with the requirements of the Sex Offender

12   Registration and Notification Act; that is, Title 42 of

13   the United States Code, Section 16901 and continuing,

14   as directed by the Probation Office, the Bureau of

15   Prisons, or any State sex offender registration agency

16   in the location where you reside, work, are a student

17   or were convicted of a qualifying offense.

18         You shall comply with the standard conditions

19   that have been adopted by this Court and are described

20   in the Sentencing Guidelines at Section 5D1.3(c) and

21   which will be set forth in detail in the judgment and

22   committal.  You must participate in a mental health

23   treatment program, as directed by the Probation Office.

24   And, pursuant to the Adam Walsh Child Protection and

25   Safety Act of 2006, you are to register as a sex

1    offender not later than three business days from

2    release from sentencing, and you will keep the

3    registration current in each jurisdiction where you

4    reside, are employed or are a student.

5         You must, not later than three business days

6    after each change in name, residence, employment or

7    student status, appear in person in at least one

8    jurisdiction in which you are registered and inform

9    that jurisdiction of all changes in the information.

10   Failure to do so may not only be a violation of this

11   condition but also a new Federal offense punishable by

12   up to ten years' imprisonment.  In addition, you must

13   read and sign the Offender Notice and Acknowledgement

14   of Duty to Register as a sex offender per the Adam

15   Walsh Child Protection and Safety Act of 2006 form.

16        Do you understand that, Mr. Debrum?

17        THE DEFENDANT:  Yes, I do, Your Honor.

18        THE COURT:  And I understand that, before this

19   hearing, you have read and understand all of the

20   provisions contained in Paragraphs 3 through 12 of the

21   presentence report.  And have you read those with your

22   attorney --

23        THE DEFENDANT:  Yes, I have, Your Honor.

24        THE COURT:  -- and understand them?

25        THE DEFENDANT:  Yes, that's correct.

1          THE COURT:  They are to apply during your entire

2     time of supervised release; do you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Then, further, prior to accepting

5     any form of employment, you must seek the approval of

6     the Probation Office in order to allow the Probation

7     Office the opportunity to assess the level of risk to

8     the community you may pose if employed in a particular

9     capacity.

10          You shall be required to contribute to the costs

11     of evaluation, treatment, programming and/or monitoring

12     and particularly Special Conditions 1, 3 and 5, as

13     included in the presentence report, based upon your

14     ability to pay or the availability of third-party

15     payment; do you understand that?

16          THE DEFENDANT:  Yes, I do, Your Honor.

17          THE COURT:  And, finally, it is ordered that you

18     are to pay to the United States a special assessment of

19     $1,500, which shall be due and payable immediately.

20          Mr. Debrum, you have a right to appeal this

21     sentence.  If you choose to appeal, you must do so

22     within 14 days.  If you cannot afford an attorney, an

23     attorney will be appointed on your behalf; do you

24     understand that?

25          THE DEFENDANT:  Yes, I do, Your Honor.

1    THE COURT:  Is there any further business to

2    come before the Court in these proceedings?

3        Ms. Jacobus.

4        MS. JACOBUS:  Yes, Your Honor.  The Government

5    has also requested, on Page 2 of our sentencing memo,

6    that there be a no-contact, direct or indirect, order

7    with the minor victims identified in the superseding

8    indictment.

9        THE COURT:  Yes, I will impose that.  There is

10   to be no contact either during your supervised release

11   or ever thereafter with any of the victims in this

12   case.

13       And what else, Ms. Jacobus?

14       MS. JACOBUS:  Secondly, Your Honor, now that the

15   Court has sentenced the Defendant on the 15-count

16   superseding indictment, the Government would orally

17   move to dismiss the underlying indictment, which had

18   the Defendant charged with two counts.

19       THE COURT:  The underlying indictment will be

20   dismissed.

21       MS. JACOBUS:  Thank you.

22       THE COURT:  Anything further?

23       MR. WATKINS:  No, Your Honor.  Thank you.

24       THE COURT:  Then, we're adjourned.

25       THE CLERK:  All rise.  The Defendant is

1    remanded.

2              (Adjourned, 4:57 p.m.)

C E R T I F I C A T I O N

        I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do
hereby certify that the foregoing pages are a true and
accurate transcription of my stenographic notes in the
above-entitled case.




                    /s/ Debra D. Lajoie




                    8/17/17